## UNITED STATES v. ONE 1946 MERCURY SEDAN AUTOMOBILE.
### No. 1749.

United States District Court
N. D. Georgia, Atlanta Division.
Oct. 29, 1951.

958

J. Ellis Mundy, U. S. Atty. for Northern District of Georgia, Lamar N. Smith, Asst. U. S. Atty., Atlanta, Ga., for plaintiff.

Harry S. McCowen, Atlanta, Ga., for claimant.

HOOPER, Chief Judge.

### Statement of the Case

The automobile in question was forfeited and condemned to the United States by a decree of this Court dated August 17, 1951, for violations of the Internal Revenue Laws set forth in the above numbered libel of information.

The Frank Graham Company filed a petition for remission of forfeiture under Section 3617(b) of Title 18 U.S.C.A.

On September 6, 1951, the petition for remission came on for a hearing on a stipu-

lation of facts, and after argument of counsel the case was submitted.

The stipulations approved by the Court are as follows:

1. That Frank Graham Company, an automobile dealer, is the owner of the automobile.

2. That on the afternoon of June 16, 1950, Frank Graham Company loaned the automobile to William Preston Archer in good faith, not knowing or having any reason to believe that William Preston Archer would use the automobile in the removal and concealment of non-tax-paid spirits.

3. That, at the time Frank Graham Company loaned the automobile to William Preston Archer, the said William Preston Archer did not have a record for violating State or Federal liquor laws.

4. That before loaning the automobile to William Preston Archer the Frank Graham Company did not investigate to see whether or not William Preston Archer had a record or reputation for violating State or Federal Liquor Laws, according to Section 3617(b), Title 18 U.S.C.A., effective September 1, 1948.

5. William Preston Archer was a satisfactory customer of Frank Graham Company and was known by it to be in the employ of Archer Plumbing Company. He had purchased an automobile from the company about a year previously, and the Repair Department of the company had done several repair jobs for him.

6. It is further stipulated that for a year or more prior to June, 1950, William Preston Archer had a reputation for violating State and Federal liquor laws with the Chief of Police of Mountain Park, Georgia; with one of the officers of the Fulton County police force stationed in North Fulton County; and with one of the agents of the State of Georgia Alcohol Tax Unit stationed in North Fulton County; but did not have a general or public reputation for violating such laws. During the time referred to, said William Preston Archer lived in Mountain Park, which is in North Fulton County.

## Opinion

1. This case involves the construction of 18 U.S.C.A. § 3617. The first question raised is whether or not under the stipulation of facts set forth above, the said William Preston Archer, who borrowed the automobile from the claimant Frank Graham Company, was a "person having a record or reputation for violating laws of the United States or of any state relating to liquor." The Government does not contend said Archer had a general reputation as a law violator, so the question resolves itself down to this, did he have such a reputation among law enforcement officers that, had the inquiry been made as provided by statute, at the proper headquarters, claimant Frank Graham Company would have been advised as to the reputation Archer had with the law enforcement officers.

Archer lived in the municipality of Mountain Park, Georgia, and for at least a year prior to June, 1950, he "had a reputation for violating state and federal liquor laws with the Chief of Police of Mountain Park." It further follows that, had claimant inquired of said Chief of Police it would have been so advised.

It is further stipulated said Archer had a bad reputation "with one of the officers of Fulton County police force stationed in North Fulton County." We may assume that this reputation was known at the office of the Chief of Police of Fulton County, but that assumption need not be indulged in. As the claimant did not call the headquarters of either the police of Mountain Park, or of Fulton County, and since it is certain that inquiry made at Mountain Park would have disclosed Archer's bad reputation, it does not seem claimant could prevail as to inquiry merely because the headquarters of the Chief of Fulton County Police did not know of such reputation. The Court will not speculate as to whether, if claimant had made inquiry, he would have made it of the county police and not the city police.

In other words, claimant did not make any inquiry at any headquarters of any law enforcement agency in Fulton County, same being the county where the

other party lived and where transaction occurred, and therefore, claimant would be chargeable with the bad reputation of said Archer with which he would have been advised had he called some of these headquarters. It is stipulated that said Archer did not have a generally bad reputation for liquor law violations.

█ It is here ruled that the "reputation" referred to in 18 U.S.C.A. § 3617(b) (3) means reputation among law enforcement officers. See United States v. One Hudson Coupe, 4 Cir., 110 F.2d 300; United States v. Ford Truck, 3 Cir., 115 F.2d 864; United States v. One 1939 Model DeSoto Coupe, 10 Cir., 119 F.2d 516; Kingston Auto Finance Co. v. United States, 4 Cir., 182 F. 2d 543; Contra: United States v. C. I. T. Corp., 2 Cir., 93 F.2d 469.

█ 2. The next question is whether claimant, by reason of his failure to make the statutory inquiry above referred to, by making a gratuitous loan of the vehicle to the borrower is barred from relief herein; it subsequently appearing that such inquiry would have apprised the claimant of the borrower's bad reputation.

In other words, do the provisions of 18 U.S.C.A. § 3617(b) (3) apply where a gratuitous loan of a vehicle is made to another, or do such provisions refer to commercial transactions only?

Title 18, § 3617(b) (3) reads as follows: "(3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract

or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

There are several reasons why this Court is of the opinion that Congress intended Subsection (3) to refer to commercial transactions and not to gratuitous loans.

In the first place, at the suggestion of the Court counsel procured copy of Committee Report upon the Act in question, which Report after quoting Subsection (3) continued: "This last requirement is predicated upon the recognition of the 'bootleg hazard' as an element to be considered in investigating a person as a credit risk. As a matter of sound business practice, automobile dealers, finance companies, and prospective lien-holders on automobiles examine records, and make inquiry of references and credit rating agencies as to the owner's or prospective purchaser's reputation for paying his debts and his ability to do so. This subsection merely requires that in the making of such inquiry, the 'bootleg hazard' also be examined as one aspect of the credit risk." (Pages 5 and 6 of the Report.)

Furthermore, there is language in Subsection (b) (3) which would seem to negative the legislative intent to include gratuitous borrowers of vehicles. Such Subsection refers to "the interest asserted by the claimant * * * subject to any contract or agreement under which any person * * * has a right with respect to such vehicle." It refers to such other person "[acquiring] his right under * * * contract or agreement," and it requires that claimant show the making of inquiry prior to the transaction involved as to the other party, in "each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person." It is not likely that Congress intended to provide that the owner of an automobile before making a gratuitous loan of the same to another, particularly for a very short period of time, should first make inquiry at various police headquarters, nor be required to make inquiry as to the char-

acter or financial standing of such other person.

Neither does it appear that the gratuitous loan of a vehicle to another vests in the borrower such a right, title or interest, as referred to in Subsection (3) quoted above. A gratuitous loan is a bailment, the title remains in the lender, there is no title conveyed to the borrower which he may transfer, and unless definite time is specified the lender may retake possession when he wishes. 8 C.J.S., Bailments, § 1, page 222, et seq. True, the borrower (bailee) in many jurisdictions may institute actions against third persons interfering with his right of possession, but these actions are for the benefit of the bailor, and "a mere gratuitous bailee cannot recover against a third person for the conversion of bailed property where the bailor or owner has intervened and asserted his rights thereto." 8 C.J.S., Bailments, § 39, page 318. These principles also hold good in Georgia. See Sections 12-101, 12-505, Georgia Code of 1933.

Apparently no Circuit Court of Appeals has dealt with this question. The question has been touched upon by several District Courts but nowhere, apparently, thoroughly considered.[1]

This ruling is consistent with the fundamental principle that forfeitures are not favored, and statutes providing forfeitures are to be strictly construed, Beaudry v. United States, 5 Cir., 106 F.2d 987; and that 18 U.S.C.A. § 3617 is a remedial statute which should be liberally construed against forfeitures. See United States v. One 1936 Model Ford, 307 U.S. 219, at page 226, 59 S.Ct. 861, 83 L.Ed. 1249.

Nothing herein contained will prevent forfeiture against an owner who makes a gratuitous loan of his vehicle where the owner has "any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State, relating to liquor." Section 3617(b) (2).

There are many decisions upholding forfeitures where an owner made a gratuitous

loan to another under circumstances sufficient to charge the lender with knowledge that the vehicle was being, or would be, used in violation of law.

It should be observed that in such cases as that the Government has relied upon proof going to show knowledge upon the part of the lender as to the borrower's reputation or intended use of the vehicle. It has not been the practice of the Government in cases of gratuitous loans to persons with bad liquor reputations to rely upon failure of the lender to make statutory inquiry.

In this case applicant owned the vehicle and therefore complied with Subsection (1). Applicant had no knowledge or reason to believe that it was being, or would be, used in violation of laws of the United States, or of any state, relating to liquor, and therefore complied with Subsection (2). It being a gratuitous loan Subsection (3) did not apply and no duty of making statutory inquiry devolved upon the claimant. Therefore claimant is entitled to remission, which is hereby ordered.

---

[1] United States v. Ford Coach, D.C.E.D. Pa., 24 F.Supp. 159; United States v. One 1937 Ford Truck, D.C.N.D.Ohio, 29 F.Supp. 278; United States v. One 1936 Model Ford, D.C.M.D.Ga., 58 F. Supp. 802(5) and United States v. One 1936 Model V-8 Ford, D.C.S.D.Ga., 58 F.Supp. 805.